UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

IN RE:     DANIEL S. BANYAI                                         Case No. 24-10242
                                                                                                                                                                         Chapter 7

TOWN OF PAWLET'S OPPOSITION TO DEBTOR'S MOTION TO AVOID THE
JUDICIAL LIEN OF THE TOWN OF PAWLET PURSUANT TO 11 U.S.C. § 522(f)(2)

NOW COMES, the Town of Pawlet, by and through its counsel, Woolmington, Campbell, Bent & Stasny, P.C., and opposes the Motion to Avoid Judicial Lien filed by Daniel S. Banyai ("Debtor") pursuant to 11 U.S.A. § 522(f) and the Federal Rules of Bankruptcy Procedure 4003(d) and 9014, which requests that the Court enter an order avoiding the judicial lien of the Town of Pawlet ("Town") recorded in the Town of Pawlet. In support of its opposition, the Town states as follows:

<u>RELEVANT FACTS AND PROCEDURAL HISTORY</u>

Debtor seeks to avoid a judicial lien stemming from fines imposed by the Environmental Division of the Vermont Superior Court for contempt of court following a years' long dispute between the Town of Pawlet, Vermont, and the Debtor relating to the enforcement of the Town's Zoning Bylaws. In its order finding Debtor in contempt, the Environmental Division found that the Debtor "has demonstrated a willfulness, perhaps even an enthusiasm for disregarding the Town's Bylaws, this Court's Orders, and the authority of the Judiciary," and that throughout the enforcement proceeding Debtor "demonstrated a willingness to openly disobey this Court's repeated orders in an attempt to

obstruct discovery, disregard injunctions, and evade curing the violations of the Town's Bylaws and this Court's Order enforcing those bylaws." *Town of Pawlet v. Daniel Banyai*, Case No. 105-9-19 Vtec, Decision on Post-Judgment Motion for Contempt and Fines (Vt. Super. Ct. Envtl. Div. Feb. 08, 2023, at * 15) (Durkin, J.) (filed as Exhibit 1). In addition, the Court "recognize[d] the tremendous effort and the resources that the Town has devoted to seeking [Debtor's] compliance in the years since its September 6, 2019 NOV, as well as its ongoing efforts to resolve the violations." The Court imposed a $200 per day fine, among other sanctions, all of which were purgeable if Debtor complied with the Court's orders within a specified time period. *Id.*

Debtor chose not to take advantage of this last opportunity to avoid contempt sanctions, with full awareness that such failure would result in significant fines. In addition to the fines, his refusal to comply with court orders resulted in the Environmental Division issuing a writ of mittimus ordering Debtor's imprisonment until the Town could bring his property in compliance with the Court's orders and the Town's Bylaws. In doing so, the Town incurred additional costs that are also recoverable under the contempt order. Exhibit 2 and 3.

One of the other ways Debtor sought to thwart the Town's enforcement efforts was by forming a nonprofit organization, to which he then conveyed the property that was the subject of the enforcement proceeding based on his incorrect belief that doing so would prevent the Town from enforcing orders relating to the property.

In August 2021, Debtor formed Slate Ridge Incorporated, Inc. (SRI) as a Vermont nonprofit organization. SRI was granted status as a 501(c)(3) organization by the Internal Revenue Service on December 20, 2022. SRI's stated mission, as approved by the IRS is: "we are a group of humans the work [sic] to educated people to self-sustain through

learning their rights and usage of working with the land and living off the land." Exhibit 4. Shortly thereafter, on December 26, 2022, Daniel S. Banyai conveyed property he owned at 541 Briar Hill Road in West Pawlet, Vermont ("Property") to SRI for no consideration. Exhibit 5.

In 2024, the Town sought to satisfy its judgment by commencing a foreclosure proceeding against SRI as the owner of the Property (claiming under Debtor), and included as Defendants others who ostensibly had an interest in the Property as occupants or junior lienholders, including Debtor, Mr. Brodsky, and Spencer & Lapre, to foreclose those interests.[1] A copy of the foreclosure Complaint was recorded in the Pawlet land records.

On November 20, 2024, after the foreclosure action was underway, SRI purported to convey the Property by quitclaim deed back to the Debtor in his individual name, without consideration. Exhibit 6. Shortly after the transfer was made on December 3, 2024, Debtor filed the present bankruptcy petition, in which he claimed the Property to be exempt up to the homestead exemption of $125,000.00 pursuant to 27 V.S.A. § 101.

The transfer from SRI to Debtor is void ab initio because when Debtor conveyed his Property into a nonprofit corporation in 2022, it became subject to the laws governing nonprofits, which prohibit the transfer of assets for private benefit. The transfer is also void as a fraudulent transfer under Vermont law. Accordingly, the Property is not properly included as part of the Debtor's Chapter 7 bankruptcy estate, and Debtor cannot claim the benefit of the homestead exemption with respect thereto.

---

[1] It is the Town's understanding that Mr. Brodsky's mortgage is illusory and likely constitutes a fraudulent conveyance. The Town is in the process of seeking additional information regarding the Brodsky Mortgage. In addition, Spencer & Lapre failed to perfect its materialman's lien within 180 days as required by Vermont law, and also stipulated to judgment against it in the foreclosure proceeding and therefore has no claim against the Property.

LEGAL ARGUMENT

The Town's judgment lien is for contempt fines imposed upon Debtor for his failure to comply with a Court order, and is therefore nondischargeable under 11 U.S.C. § 523(a)(7) (debt for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit is not dischargeable). Accordingly, Debtor's motion pursuant to 11 U.S.A. § 523(f) seeks to avoid the Town's lien for a non-dischargeable debt to the extent that it impairs his homestead exemption.

*Owen v. Owen* (500 U.S. 305, 111 S.C.t 1833 (1991)) set forth a three-step process to determine whether Section 522(f) applies. First, the Court determines whether the debtor is entitled to the exemption. Second, the court determines the extent to which the lien may be avoided. And third, the court determines whether the lien does, in fact, impair the exemption. Because the subject Property is not owned by the Debtor and therefore not properly included in his bankruptcy estate, Debtor cannot assert a homestead exemption and thus his motion fails at step one of the *Owen* analysis.

A. The Transfer from SRI to Debtor is void ab initio under Vermont law

Following the commencement of the Town's foreclosure proceeding against SRI, it purportedly transferred the real property from SRI to Debtor individually in order to assert a homestead exemption in the bankruptcy filing that immediately followed. However, when Debtor transferred the property to a nonprofit corporation in 2022, it became subject to the laws governing such entities, both state and federal. Title 11B, Vermont's nonprofit corporation statute, provides the framework for nonprofit governance. It includes requirements for fiduciary duties, transparency, and accountability. Under Vermont law, a nonprofit corporation cannot just transfer its assets to an individual.

The statute provides: "[A]ny corporation which does not come within section (1) of this section but which is recognized as exempt under 501(c)(3) of the Internal Revenue Code, or any successor section, is a public benefit corporation." 11B V.S.A. § 17.05(2). Slate Ridge Incorporated, Inc. is a 501(c)(3), and therefore a public benefit corporation under Vermont law.

Except for assets sold in the regular course of business,[2] a Vermont public benefit corporation cannot dispose of all or substantially all of its property without (1) formal approval by the Board; and (2) in the absence of a written waiver therefrom, 20 days' advance notice to the Vermont Attorney General. There is no documentation to suggest that either of these prerequisites were satisfied prior to the purported transfer, and Debtor confirmed under oath at the Meeting of Creditors that SRI had done neither.

Pursuant to 11B V.S.A. § 13.01, a nonprofit corporation may not make any distributions other than what are permissible under 11B V.S.A. § 13.02. With respect to a public benefit corporations, such as Slate Ridge Incorporated, Inc., 13.02(b) controls what distributions are permissible, and provides that "[a] public benefit corporation . . . may make distributions upon dissolution in conformity with chapter 14 of this title." In other words, distributions from a public benefit corporation are <u>not authorized outside of the context of the dissolution of such corporation</u>.

Chapter 14 of Title 11B governs dissolution of nonprofit corporations. Section 14.01 requires that "[t]he incorporators or directors in approving dissolution shall adopt a plan of dissolution indicating to whom the assets owned or held by the corporation will be

---

[2] Because Slate Ridge Incorporated, Inc. is not engaged in the business of conveying real property, the conveyance of its only real property is not a sale or conveyance of assets in the regular course of business.

distributed after all creditors have been paid." 11B V.S.A. § 14.01(c). In addition to various notice and approval requirements, § 14.02(f) requires that a "plan of dissolution shall indicate to whom the assets owned or held by the corporation will be distributed after all creditors have been paid."

Section 14.05 of Title 11B mandates that nonprofit assets be distributed for public or charitable purposes upon dissolution. Specifically, Title 11B outlines what a nonprofit is authorized to do upon its dissolution, and only permits a public benefit corporation that has no provision in its articles or bylaws for distribution of assets on dissolution, to transfer its assets "to one or more persons recognized as exempt under Section 501(c)(3) of the Internal Revenue Code." Section 14.05(a)(7).

There is no authorization on record with the Town Clerk, and the Debtor confirmed under oath at the Meeting of Creditors that no authorizing resolution was passed. Nor is there any other indication anywhere that SRI followed any of the formalities required for dissolution. Even if it had, because SRI is a 501(c)(3) organization, and the Debtor is not a 501(c)(3) organization, the transfer to him is unlawful and void under Vermont law.

B.  <u>The Transfer from SRI to Debtor is Void as a Fraudulent Transfers</u>

Under Vermont's enactment of the Uniform Fraudulent Transfers Act (UFTA), a debtor may not claim an exemption in property obtained through a transfer made by the debtor "with actual intent to hinder, delay, or defraud any creditor of the debtor." 9 V.S.A. § 2288(a)(1)[3]. Thus, while under Vermont law allows a debtor in contemplation of

---

[3] "A creditor asserting a fraudulent transfer claim bears 'the burden of proving the elements of the claim for relief by a preponderance of the evidence.'" *Berkley Insurance Company v. Bouchard*, Case No. 2:20-cv-00009, 2020 WL 7646542, *8 (D. Vt. Dec. 23, 2020) (quoting 9 V.S.A. § 2288(c). "[Section] 2288 'provides two bases for finding that a transfer is fraudulent-either the debtor effected the transfer with actual intent to defraud a creditor, or the debtor did

bankruptcy to convert nonexempt property into exempt property, it may only do so as the conversion does not violate the Uniform Fraudulent Conveyance Act, which contains a lengthy list of factors or "badges or fraud" which a court may look to for help in determining actual intent.

"The determination of a defendant's fraudulent intent is a fact-intensive inquiry and is nearly always proven from surrounding circumstances rather than direct evidence." *Berkley Insurance Company v. Bouchard*, Case No. 2:20-cv-00009, 2020 WL 7646542, *8 (D. Vt. Dec. 23, 2020) (quoting *In re Montagne*, 417 B.R. 232, 238 (Bankr. D. Vt. 2009)). "When these badges of fraud are present in sufficient number, it may give rise to an inference or presumption of fraud." *Id.*

> In determining actual intent under subdivision (a)(1) of [§2288], consideration may be given among other factors to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

9 V.S.A. § 2288(b). Nearly all of the badges of fraud are present with respect to the transfer from SRI to the Debtor in his individual name.

---

not receive reasonably equivalent value for the transferred property and the elements of either § 2288(a)(2)(A) or (B) are satisfied. The latter type of fraudulent transfer is generally described as a constructively fraudulent transfer.'" *Id.* (quoting *In re Montagne*, 417 B.R. 232, 238 (Bankr. D. Vt. 2009).

Likewise, 11 U.S.A. § 522(o) provides that the amount of a state homestead exemption is reduced to the extent that the value of the exemption is attributable to nonexempt property that the debtor converted into the homestead within 10 years of filing for bankruptcy, if the conversion was made "with the intent to hinder, delay, or defraud a creditor." Thus, even if it did apply the exemption should be reduced to $0.[4]

The Debtor will likely assert that the original transfer from himself to SRI was also a fraudulent transfer that should be voided, which would have the effect of placing the Property under his individual ownership, allowing him to assert the homestead exemption. While the transfer may have also been made for fraudulent purposes, Debtor is precluded from benefiting from his own fraud by the defense of *in pari delicto* which prohibits a wrongdoer from benefiting from their own misconduct. *See E.g., Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1151 (11th Cir. 2006) (in pari delicto applies with equal force to a trustee in bankruptcy as a debtor outside of bankruptcy).[5]

---

[4] In a further effort to thwart the Town, Debtor's good friend at the time, David Brodsky, recorded a significant mortgage against the property in the amount of over eight hundred thousand dollars. It appears that there was no consideration for the mortgage, and that it is illusory and was recorded for the sole purpose of attempting to defeat the Town's claim in the property. The Debtor's responses under oath at the Meeting of Creditors support the Respondent's conclusion: the Debtor was unable to explain what the loan was for, and confirmed that he never actually received any money from Mr. Brodsky. The Debtor stated that the loan had something to do with Mr. Brodsky's property being removed from his land during the Debtor's incarceration, but the Mortgage instrument predates Debtor's incarceration by over a year, so that explanation appears to be false.

[5] When Debtor was testifying under oath at the Meeting of Creditors, he asserted that the reason he transferred the Property to SRI was for the tax benefit he would get for making a tax-deductible donation. Debtor has subsequently filed with the Court an affidavit indicating that he had no taxable income for the fiscal years 2022, 2023, or 2024, and that he has "not received any taxable income since at least 2001 which would have required me to file a federal tax return." (Doc. 8). Given this fact, the reason Debtor gave for the transfer under oath could not be true—if he had no taxable income, there would be no benefit to him in making a tax-deductible donation to a nonprofit.

Signed at Manchester, Vermont this 16th day of January, 2025.

                                        */s/ Merrill E. Bent*
                                        Merrill E. Bent, Esq.
                                        Woolmington, Campbell, Bent & Stasny, P.C.
                                        4900 Main Street, PO Box 2748
                                        Manchester Ctr., VT 05255
                                        (802) 362-2560
                                        merrill@greenmtlaw.com