Formatted for Electronic Distribution　　　　　　　　　　　　　　　　　　Not for Publication

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
05/22/2025

In re:

    **Daniel S. Banyai,**　　　　　　　　　　　　　Case # 24-10242
          **Debtor.**　　　　　　　　　　　　　　　　　Chapter 7

*Appearances:*

  *Michael Brian Fisher, Esq.*　　　　　　*Paul A. Levine, Esq.*
  Fisher Law Offices, PLLC　　　　　　　Albany, New York
  Hanover, New Hampshire　　　　　　　Chapter 7 Trustee
  For the Debtor

  *Merrill E. Bent, Esq.*
  Woolmington, Campbell, Bent & Stasny, P.C.
  Manchester Center, Vermont
  For the Town of Pawlet

### Memorandum of Decision Denying Debtor's Motion to Avoid Lien

In Debtor's Motion to Avoid the Judicial Lien of the Town of Pawlet Pursuant to 11 U.S.C. § 522(f)(2) (the Motion), Debtor seeks to avoid the judicial liens held by the Town of Pawlet (the Town) on real property located at 541 Briar Hill Road, West Pawlet, Vermont (the Property), asserting the Town's liens impair Debtor's homestead exemption.[1] The Town objects, contending Debtor has not met his burden of proof because Debtor's homestead remains subject to the judicial

---

[1] *See* Debtor's Motion to Avoid Judicial Lien of the Town of Pawlet Pursuant to 11 U.S.C. § 522(f)(2), ECF 7; Affidavit of Daniel S. Banyai in Support of Debtor's Motion to Avoid Judicial Lien of Town of Pawlet Pursuant to 11 U.S.C. § 522(f), ECF 19; Memorandum of Law in Support of Debtor's Motion to Avoid Judicial Lien, ECF 19-1.

1

liens under Vermont law.[2] The Town asserts the Motion should be denied.[3] For the reasons articulated below, the Court agrees with the Town and denies the relief requested in the Motion.

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157, 1334, and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. The Court determines that pursuant to 28 U.S.C. § 157(b)(2)(B), this proceeding contains core matters, as it primarily involves determination of exemptions from the Debtor's estate, over which this Court has constitutional authority to enter a final judgment.

## FACTUAL BACKGROUND

Debtor and the Town (collectively, the Parties) have been involved in ongoing litigation concerning the Property since 2019.[4] Although the Parties do not dispute the facts pertinent to this contested matter, it is worth acknowledging their long and, at times, contentious history. For the sake of brevity, the Court will only address aspects of the past litigation as are pertinent and necessary to the issues before the Court. Further, because the timeline of events is particularly important, the relevant aspects of the past litigation follow in chronological order.

Debtor originally purchased the Property in 2013 and began living there with his non-filing spouse.[5] At some point while residing there, Debtor began to make alterations to the Property that violated certain local zoning bylaws. As a result, in 2019 the Town commenced an action against

---

[2] Town of Pawlet's Supplemental Opposition to Debtor's Motion to Avoid the Judicial Lien of the Town of Pawlet Pursuant to 11 U.S.C. § 522(f)(2), ECF 25.

[3] Town of Pawlet's Opposition to Debtor's Motion to Avoid the Judicial Lien of the Town of Pawlet Pursuant to 11 U.S.C. § 522(f)(2), ECF 9; Town of Pawlet's Supplemental Opposition to Debtor's Motion to Avoid the Judicial Lien of the Town of Pawlet Pursuant to 11 U.S.C. § 522(f)(2), ECF 25.

[4] *See* Exhibit 1C, Decision on Post-Judgment Motion for Contempt and Fines, ECF 26-3; *see also* Town of Pawlet v. Banyai, No. 105-9-19 Vtec.

[5] *See* Affidavit of Daniel S. Banyai in Support of Debtor's Motion to Avoid Judicial Lien of Town of Pawlet Pursuant to 11 U.S.C. § 522(f), ECF 19.

2

Debtor in Vermont Superior Court, Environmental Division (the Superior Court) seeking declaratory judgment, injunctive relief, and fees.[6] The Superior Court eventually confirmed the alterations did, in fact, violate local zoning bylaws and entered a Final Judgment Order to that effect in March 2021.[7] The Final Judgment Order imposed fines on Debtor for the zoning violations, as well as additional fines set to accrue until the violations were cured.[8] The Final Judgment Order also directed Debtor to take certain steps (i.e., creation of a site map) in order to assist the Superior Court track his compliance with its orders.[9] The Final Judgment Order was affirmed in January 2022.[10]

Amidst the litigation, Debtor formed a Vermont public benefit corporation named Slate Ridge, Inc. (SRI).[11] SRI is a certified 501(c)(3) nonprofit organization under the Internal Revenue Code and is controlled by Debtor, as Director.[12] In December 2022, after the Superior Court entered the Final Judgment Order, Debtor conveyed the Property to SRI by quitclaim deed.[13] The conveyance was recorded in January 2023.[14] Debtor stated the transfer of the Property was for "tax purposes."[15]

Despite affirmation of the Final Judgment Order which rendered it final, in the following

---

[6] *See* Town of Pawlet v. Banyai, No. 105-9-19 Vtec.

[7] *See* Exhibit B, Judgment Order, ECF 7-2.

[8] *Id.*

[9] *Id.*

[10] Exhibit 1C, Decision on Post-Judgment Motion for Contempt and Fines, ECF 26-3, p. 14.

[11] *See* Town of Pawlet's Opposition to Debtor's Motion to Avoid the Judicial Lien of the Town of Pawlet Pursuant to 11 U.S.C. § 522(f)(2), ECF 9, p. 2; *see also* Exhibit 4, Slate Ridge Incorporated 501(c)(3) IRS Determination, ECF 9-4.

[12] Exhibit 4, Slate Ridge Incorporated 501(c)(3) IRS Determination, ECF 9-4.

[13] *See* Exhibit 5, Vermont Quitclaim Deed, ECF 9-5.

[14] Exhibit 6A, Quitclaim Deed Banyai to SRI, ECF-25-4 (copy has clerk's office stamp dated January 9, 2023).

[15] Affidavit of Daniel S. Banyai in Support of Debtor's Motion to Avoid Judicial Lien of Town of Pawlet Pursuant to 11 U.S.C. § 522(f), ECF 19.

3

months Debtor failed to substantively comply with the Superior Court's directives. Although Debtor eventually complied with certain discovery directives, he failed to cure the zoning violations and continued to make further alterations to the Property despite the Final Judgment Order.[16] Consequently, in February 2023, the Superior Court issued a post-judgment civil contempt order against Debtor – finding him to be in contempt of court, issuing sanctions to coerce compliance with previous Court orders, and threatening a writ of mittimus for his imprisonment.[17]

Despite being found in contempt, sanctioned, and threatened with imprisonment, Debtor continued to avoid compliance with the Superior Court's orders. As a result of his ongoing non-compliance, the Superior Court entered an order granting the Town fees related to Debtor's contempt and resulting in an additional lien on the Property (the Contempt Lien).[18] The Contempt Lien was recorded first in January 2024, and again in June 2024.[19] The Superior Court also entered an order awarding the Town attorneys' fees associated with the litigation, creating yet an additional lien on the Property (the Fee Lien) which was recorded in May 2024.[20] Finally, the Superior Court issued a writ of mittimus for the imprisonment of Debtor,[21] and he was subsequently detained and incarcerated from March 2024 through August 2024.[22] For ease of reference, the Contempt Lien and the Fee Lien will be collectively referred to as the Town's liens.

---

[16] *See* Exhibit 1C, Decision on Post-Judgment Motion for Contempt and Fines, ECF 26-3, pp. 4-6.

[17] *Id.* at pp. 27-29.

[18] See Exhibit 1A, Judgment Order, ECF 26-1.

[19] *Id.* The Contempt Decision was recorded again in June 2024 following the Vermont Supreme Court's decision on appeal and the expiration of the period for reargument, at which point it was clear that the Decision was final, binding, and unappealable. *See* Town of Pawlet's Supplemental Opposition to Debtor's Motion to Avoid the Judicial Lien of the Town of Pawlet Pursuant to 11 U.S.C. § 522(f)(2), ECF 25, fn 1.

[20] *See* Exhibit 1B, Entry Regarding Motion, ECF 26-2.

[21] Exhibit 1A, Judgment Order, ECF 26-1.

[22] Affidavit of Daniel S. Banyai in Support of Debtor's Motion to Avoid Judicial Lien of Town of Pawlet Pursuant to 11 U.S.C. § 522(f), ECF 19.

4

In late November 2024, after Debtor's release, as Director of SRI, he conveyed the Property from SRI back to himself via quitclaim deed.[23] The Parties do not dispute the Town's liens attached while SRI was the legal owner of the Property. Thereafter, in December 2024, Debtor commenced this bankruptcy case under chapter 7 of the Bankruptcy Code and claimed a homestead interest in the Property.[24] Upon filing for bankruptcy, any actions by the Town against the Property were stayed.

Debtor filed the Motion to Avoid the Judicial Lien of the Town of Pawlet shortly after commencing his bankruptcy case. In the Motion, Debtor argues he is entitled to a homestead exemption in the Property under Vermont law, and requests that the Town's liens on the Property be avoided pursuant to § 522(f)(2)[25] to the extent they impair his interest.[26] The Motion notes that the Property is worth approximately $100,000 and Vermont law allows a homestead exemption not exceeding $125,000.[27] The Motion further explains that, at the time of filing, the Town's liens far exceeded the value of the Property and therefore would impair Debtor's interest.[28] The Motion concludes that the entire amount thus can and should be avoided.

Debtor also filed an affidavit and memorandum in support of the Motion.[29] The memorandum alleges that, although Debtor transferred the Property to SRI in January 2023, such

---

[23] Exhibit 6, Vermont Quitclaim Deed, ECF 9-6 (deed was recorded the same date). The Parties do not dispute SRI was the legal owner of the Property from January 9, 2023 to November 25, 2024. ECF 25 at p. 2.

[24] Chapter 7 Voluntary Petition, ECF 1; Unless otherwise indicated, all references to the "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. 101, § et seq. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[25] All statutory citations refer to Title 11 of the United States Code (the Bankruptcy Code) unless otherwise indicated.

[26] Debtor's Motion to Avoid Judicial Lien of the Town of Pawlet Pursuant to 11 U.S.C. § 522(f)(2), ECF 7.

[27] *Id.* (citing attached appraisal and Vt. Stat. Ann. § 101).

[28] *Id.*

[29] Affidavit of Daniel S. Banyai in Support of Debtor's Motion to Avoid Judicial Lien of Town of Pawlet Pursuant to 11 U.S.C. § 522(f), ECF 19; Memorandum of Law in Support of Debtor's Motion to Avoid Judicial Lien, ECF 19-1.

5

action did not relinquish his homestead interest.[30] The memorandum points to Debtor's continued occupancy of the Property and asserts the transfer to SRI was never intended to be permanent, thus he maintained equitable title even while SRI held legal title.[31] Nevertheless, Debtor provides no evidence to suggest he held a concrete right to acquire the Property.[32] Debtor does not dispute that he lacked legal ownership in the Property while SRI held title. Rather, Debtor argues he maintained an equitable ownership interest in the Property, sufficient to invoke a homestead interest and therefore the transfers to and from SRI is of no consequence to his claimed homestead.[33]

The Town objected to the Motion first on the basis that the liens are non-dischargeable under § 523(a)(7).[34] However, the Town later reframed its objection in a supplemental filing, arguing the Town's liens are not avoidable under Vermont law because the claimed homestead is subject to the Town's liens since they attached before Debtor reacquired his legal ownership interest in the Property.[35] The supplement cites 27 V.S.A. § 107 which states that a homestead interest remains "subject to the attachment and levy of execution upon causes of action existing at the time of acquiring the homestead."[36] The supplement also notes that under Vermont law, the date of acquisition of a homestead is the date of the filing of such deed.[37] Because the Contempt Lien and Fee Lien attached to the Property in January and May of 2024 – when SRI still held title

---

[30] Memorandum of Law in Support of Debtor's Motion to Avoid Judicial Lien, ECF 19-1.

[31] *Id.*

[32] While Debtor refers to SRI as his non-profit organization (ECF 19, ¶7), the record is undeveloped to disregard the corporate entity.

[33] Memorandum of Law in Support of Debtor's Motion to Avoid Judicial Lien, ECF 19-1.

[34] Town of Pawlet's Opposition to Debtor's Motion to Avoid the Judicial Lien of the Town of Pawlet Pursuant to 11 U.S.C. § 522(f)(2), ECF 9.

[35] Town of Pawlet's Supplemental Opposition to Debtor's Motion to Avoid the Judicial Lien of the Town of Pawlet Pursuant to 11 U.S.C. § 522(f)(2), ECF 25.

[36] *Id.* (quoting 27 V.S.A. § 107).

[37] *Id.*

– the supplement concludes that Debtor took the Property as his homestead subject to the Town's liens when he reacquired title in late November 2024.[38]

On April 4, 2025, the Court held a hearing at which the Parties appeared and presented oral argument. During the hearing, the Parties did not dispute the dates the Town's liens attached to the Property and did not dispute the Property was legally titled in SRI from January 2023 through November 2024. Conversely, the Parties disagreed on whether the Property constituted Debtor's homestead while SRI held title. Following the hearing, the Court took the matter under advisement.

## DISCUSSION

This contested matter requires the Court to determine whether: (A) Debtor has met his burden of proof and established the requisite elements under the Bankruptcy Code to avoid liens that impair an exemption; and (B) the scope of Debtor's homestead interest and whether he had an ownership interest in the Property as of the dates the Town's liens attached, sufficient to give rise to a homestead exemption that would insulate the Property (up to the limit of the homestead exemption) from the Town's enforcement of the Town's liens. Based upon the facts and circumstances specific to this case, the Court finds that although the Debtor has established that he is entitled to a homestead exemption as of the date of the filing of his petition, the scope of that exemption does not include the Town's liens on the Property under Vermont homestead law.

**A. Debtor Established the Requisite Elements under 11 U.S.C. §522(f)**

Section 522(f) of the Bankruptcy Code provides that under certain circumstances a debtor may avoid a judicial lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled" under the applicable exemption

---

[38] *Id.*

statute.[39] To state a claim for relief under § 522(f), Debtor must establish four basic elements: (1) there must be an exemption to which the debtor would have been entitled under § 522(b); (2) the property must be listed on the debtor's schedules and claimed as exempt; (3) the lien must impair that exemption; and (4) the lien must be a judicial lien.[40] As the movant, Debtor bears the burden to prove each element by a preponderance of the evidence.[41] Debtor must establish the prerequisites for relief, which include the value of the property itself and the value of other liens.[42]

The Court finds that the first element is met. A debtor who seeks bankruptcy relief in Vermont may choose to exempt property under either the federal exemption statute or Vermont law.[43] Here, the Debtor chose to utilize state exemptions, meaning "state law controls with respect to the scope of the exemption."[44] The Vermont statute defining the homestead which an individual may generally exempt from attachment and execution provides as follows:

> The homestead of a natural person consisting of a dwelling house, outbuildings, and the land used in connection therewith, not exceeding $125,000.00 in value, and owned and used or kept by the person as a homestead together with the rents, issues, profits, and products thereof, shall be exempt from attachment and execution **except as otherwise provided** in this chapter.[45]

Additionally, applicable Vermont caselaw provides that the date of the filing for relief determines the right of a debtor to claim a homestead exemption.[46] Where a debtor owns real property, the Court must inquire as to whether the debtor both owned and occupied the property on the date of

---

[39] 11 U.S.C. § 522(f)(1)(A).

[40] *In re Rojas*, 2024 WL 1456068, *2 (Bankr. E.D.N.Y. April 3, 2024).

[41] *In re Hewitt,* 576 B.R. 790, 793 (Bankr. D. Vt. 2017).

[42] *Id.*

[43] 11 U.S.C. § 522(b)(1).

[44] *In re Bourgault*, 2011 WL 1238925, *2, 2011 Bankr. LEXIS 1221, *6 (Bankr. Vt. Mar. 30, 2011) (*citing CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253, 259 (2d Cir. 2009)).

[45] 27 V.S.A. § 101 (2023) (emphasis added).

[46] *See In re Greene,* 451 B.R. 331, 338-39 (D. Vt. 2011).

8

the petition.[47] Because the Parties agree Debtor owned and occupied the Property as of December 3, 2024 (the Petition Date),[48] there is no dispute that the Debtor was entitled to a homestead exemption under Vermont law on the Petition Date.

Elements two and four are also met. When he filed his petition, Debtor identified the Property in his schedules and claimed it as exempt.[49] And there is no question the Town's liens on the Property are judicial in nature in accordance with § 101(36).[50]

Finally, the Court finds that element three is satisfied. Under § 522(f)(1), a debtor may avoid a judicial lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled." A lien is considered to "impair" an exemption to the extent it "exceeds the value that the debtor's interest in the property would have in the absence of any liens."[51] Section 522(f)(2)(A) sets forth a calculation to determine whether a judicial lien impairs an exemption to which the debtor would have been entitled. That calculation includes the amount due on all "other liens on the property" and the value of the property in which Debtor claims a homestead. This Court's Local Rules reiterate the Debtor's duty to "specify the value of the property" and "the amount due on each lien."[52]

Debtor's statements as to the value of the Property in relation to the Town's liens are sufficient to demonstrate potential impairment. Importantly, "[t]he owner of real property is competent to testify concerning its value."[53] Here, Debtor claims the amount of the Town's liens

---

[47] *Id.* at 338.

[48] Voluntary Petition for Individuals Filing for Bankruptcy, ECF 1.

[49] Schedule A/B Property, ECF 1 at p. 10; Schedule C: The Property You Claim as Exempt, ECF 1 at p. 16.

[50] Section 101(36) defines the term "judicial lien" as a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

[51] 11 U.S.C. 522(f)(2).

[52] Vt. LBR 4003-2(a).

[53] *Edwards v. Town of Stowe*, No. 2013-439, 2014 WL 3714889 *3 (Vt. June 12, 2014).

far exceed the approximated value of the Property and therefore could impair any homestead interest he may claim as exempt. The Court also notes the Town does not dispute the value of the Property or the amount of the Town's liens.

Debtor has satisfied all the elements necessary to state a claim for relief under § 522(f). However, the Court's inquiry does not end there. While Debtor would have been entitled to claim a homestead exemption as of the Petition Date, the Court must still determine the scope of Debtor's claimed homestead under Vermont law under the specific facts and circumstances of this case.

**B. Pursuant to 27 V.S.A. §§ 101, 107 Debtor's Homestead Exemption is Limited in Scope and in the Property is Subject to the Town's Liens**

As previously stated, because Debtor chose to utilize state exemptions, state law controls as to their scope. Consequently, although 27 V.S.A. § 101 establishes an exemption, that exemption is not unlimited based upon the plain language of the statute. The Court must consider 27 V.S.A. § 107 and whether it creates an exception in this case. 27 V.S.A. § 107 addresses liability of a homestead for preexisting debts. The statute specifies that "such homestead shall be subject to attachment and levy of execution upon causes of action existing at the time of acquiring the homestead, except as otherwise provided in this chapter."[54]

Whether 27 V.S.A. § 107 applies here – and therefore whether Debtor's homestead interest is subject to the Town's liens – depends entirely on (1) when the Town's liens attached to the Property and (2) if Debtor had "acquired" the Property as his homestead before the Town's liens attached. The answer to the first question is straightforward – the parties do not dispute the Contempt Lien was recorded in January 2024 and the Fee Lien in May 2024. However, the second question is more nuanced and merits further discussion.

---

[54] 27 V.S.A. § 107.

10

Debtor established he held a homestead interest in the Property as of the Petition Date. However, determining when exactly he *acquired* the homestead for the purposes of 27 V.S.A. § 107 is a separate inquiry entirely. The statute does not define the time of acquiring the homestead as the date when the property began to be used as a home – rather it provides that homestead is acquired on "***the date of the filing of the deed*** of such homestead in the proper office for the record of deeds."[55] Therefore, when the deed was recorded holds the most significance in determining when a debtor acquired a homestead for the purposes of 27 V.S.A. § 107. The Vermont Supreme Court interpreted a prior version of the statute and came to the same conclusion. The Court determined the statute:

> clearly exempts the homestead from attachment on all debts except such as have an existence at the time the deed thereof is left for record. The word "homestead" is evidently used in the statute with reference to the condition of the premises in that respect, at the time the attempt is made to attach or levy upon it, and not to its condition at the time the deed is left for record.[56]

In *West River Bank v. Gale*, Gale purchased property in 1855, recorded the deed in 1857, signed a note as surety to West River Bank in 1859, and moved with his family into the property, making it is home, and continued to reside there through the Bank's commencement of suit in 1861 and receipt of a judgment.[57] The Bank argued the property was not exempt because the debt existed at the time Gale first began to occupy it as a homestead.[58] To determine whether the property was subject to the attachment while occupied as a homestead, the court interpreted the statute, and noted "if the legislature had intended to leave the homestead subject to attachment on all debts existing at the time it was first occupied as such, language would have been used indicated

---

[55] *Id.* (emphasis added).

[56] *West River Bank v. Gale*, 42 Vt. 27, 31 (Vt. 1869).

[57] *Id.* at 30-31.

[58] *Id.*

11

such an intent."[59] Based upon the facts before it, the Court concluded Gale's homestead in the property was not subject to attachment by the Bank.[60]

While an ownership interest generally means legal title in the form of a deeded interest, in certain circumstances Vermont law recognizes the existence of a homestead interest based upon equitable title.[61] In reliance on that authority, Debtor argues that although he had no legal interest when SRI owned the Property, he possessed an equitable interest sufficient to establish the Property constituted his homestead when the Town's liens attached. Debtor concedes he transferred his legal ownership interest in the Property to "my non-profit organization [SRI]"[62] but notes that he continually resided at the Property while it was titled in SRI and did not intend the transfer to be permanent. The Court finds Debtor's argument unpersuasive.

Under Vermont law, equitable title sufficient to support a homestead claim is construed narrowly – there must be "a beneficial interest in property" meaning it gives the holder a concrete right to acquire formal legal title and not just a possibility of acquiring title.[63] A concrete right to acquire formal legal title typically requires a valid contract to purchase the property, legal title being held by another only "for purposes of security" where claimant had lived for years in the property, and where there is an enforceable oral contract under which the claimant took possession, built a house, and made other improvements.[64] Here, Debtor provides no evidence of a concrete

---

[59] *Id.* at 32.

[60] *Id.*

[61] *See Brattleboro Sav. & Loan Ass'n v. Hardie,* 2014 VT 26, 196 Vt. 144, 94 A.3d 1132 (2014); *In re Soter*, 26 B.R. 838, 841 (Bankr. D. Vt. 1983); *Morgan v. Stearns*, 41 Vt. 398, 407 (Vt. 1868).

[62] *See* Affidavit of Daniel S. Banyai in Support of Debtor's Motion to Avoid Judicial Lien of Town of Pawlet Pursuant to 11 U.S.C. § 522(f), ECF 19, ¶7.

[63] *In re Hewitt*, 576 B.R. at 796; *see also Brattleboro Sav. & Loan Ass'n v. Hardie*, 196 Vt. at 152 (requires a "definitive right to acquire formal legal title").

[64] *See Brattleboro Sav. & Loan Ass'n v. Hardie*, 196 Vt. 144; *Prue v. Royer*, 2013 VT 12, 193 Vt. 267, 67 A.3d 895 (2013); *Field v. Costa*, 2008 VT 75, 184 Vt. 230, 242-43, 958 A.2d 1164 (2008); *Morgan v. Stearns,* 41 Vt. 398, 407 (Vt. 1868); *Canfield v. Hard,* 58 Vt. 217, 2 A. 136, 151-52 (Vt. 1885).

right to acquire formal legal title. Debtor's claim to have transferred the Property to SRI to hold temporarily for "tax purposes" is insufficient to establish a concrete right to re-acquire formal legal title from SRI under Vermont law. Absent evidence to support a concrete right to acquire formal legal title (i.e., some form of documentation or a contract), Debtor cannot establish he held equitable title to the Property under Vermont law.[65]

Also instructive in this case is *In re Hewitt*, decided in 2017.[66] In *Hewitt*, the debtor attempted to establish a homestead right in property to which he did not hold title – the property was owned by an LLC which the debtor controlled.[67] In that case, the debtor argued that his membership interest and control of the LLC combined with his occupancy of the property established equitable title.[68] The Court found this argument unpersuasive recognizing the legal distinction between an LLC and its individual members. Merely being a member of an LLC does not establish a concrete right to acquire formal legal title to property belonging to the LLC, and the debtor was unable to point to any evidence in the record to establish he ever held such a right.[69] The same reasoning applies here. Although the Property was owned by a public benefit corporation or a "non-profit corporation" rather than an LLC, being the director of that corporation similarly does not establish a right to acquire legal title to property titled in the name of the corporation.[70]

Debtor attempts to distinguish *Hewitt* in his arguments but is unsuccessful. He points out that the Property was legally titled in the name of Debtor as of the date of filing in this case,

---

[65] *See Brattleboro Sav. & Loan Ass'n v. Hardie,* 2014 VT 26, ¶16 (finding that equitable title is a matter of right to a property, and that the "less certain the right to the property, the less likely we are to find equitable title").

[66] *See In re Hewitt*, 576 B.R. 790.

[67] *Id.*

[68] *Id.*

[69] *Id.* at 795-96

[70] *See* 11B V.S.A. § 3.02(4) (a public benefit corporation, distinct from its members, can only acquire property in its own name and for its own benefit, or in a fiduciary capacity.)

13

whereas in *Hewitt*, the LLC held legal title as of the date of filing. The Court finds this a distinction without a difference. Debtor does not address how being the director of a corporation (even though he refers to it as his) vests equitable title to the Property in him personally. Based upon the clear exception to the Vermont homestead exemption found in 27 V.S.A. § 107, Debtor divested himself of ownership of the Property and during that time, the Town's liens attached.

Because the Debtor held neither legal nor equitable title to the Property when it was owned by SRI, he had no legal or equitable ownership interest as is necessary to establish a homestead interest during that period. Debtor acquired the Property as his homestead in late November 2024, when SRI transferred title, and he recorded the deed. Because the Contempt Lien and Fee Lien attached to the Property prior to Debtor acquiring it as his homestead, pursuant to 27 V.S.A. § 107 the Property is subject to attachment and levy of execution upon those liens. Due to the timing of events, Debtor acquired the Property subject to the Town's liens and they cannot be avoided.

## Conclusion

For the reasons set forth above, the Court finds that the Property did not constitute the Debtor's homestead at the time when the Contempt Lien and Fee Lien attached. Therefore, when the Debtor acquired the Property as his homestead in November 2024, his homestead interest is subject to those liens under the Vermont law. Accordingly, the Town's liens cannot be avoided under § 522(f), and the Motion must be denied.

This memorandum decision constitutes the Court's findings of fact and conclusions of law. A separate order will issue.

May 22, 2025  
Burlington, Vermont

Heather Z. Cooper  
United States Bankruptcy Judge